Afternoon, I guess. Would you like to reserve some time? Yes, Your Honor. I'd like to reserve five to seven minutes. Five to seven. Okay. Go ahead, please. Thank you, Your Honors. May it please the Court, Lenore Albert, Appellant. This is a post-judgment appeal. It concerns nuances between violations of 362-stay versus violation of discharge under 524 and also 525. As Tager said, contempt is appropriate unless there is a fair, grounded doubt that discharge doesn't apply. Well, here on January 23, 2023, I won judgment against the State Bar for contempt. However, that judgment doesn't fully vindicate my rights, leaving me vulnerable to a very powerful state agency that literally holds my license and thus my likelihood in its hands. And this is why I'm on appeal. I want to give two examples, one a very clear one of why reversal is needed, and another one is just because the law is so nuanced with 11 U.S.C. 525 that relates to the 524 and 362 issue. So first, the clearest example would be the Client Security Fund order that unexpectedly popped up into existence in April 2021 in my case. I filed in 2018, and I had my discharge in February 26, 2019, which would have discharged Dr. Woods' debt. The State Bar created a Client Security Fund debt and said I had to repay it in order to reinstate my license. Well, I did pay it on April 20, 2021, which was $20,000 plus $801 and some odd cents that the State Bar charged me in interest and their fees. Well, in June 2021, proverbial down-the-hall ruling of the courthouse, but in this district, Judge Robles ruled that CSF debt, which names a client, is not accepted from discharge under 11 U.S.C. 523A7. Ms. Grant, who was counsel in this case representing State Bar and also counsel in the CASAS matter before Judge Robles, took two different positions. In the CASAS case, the State Bar did not refute that position, that that kind of debt was dischargeable. But yet in my case, they made me pay it to get my license back, all within the same, basically 30-some days or 60-some days. But what happened in my case is that a year later in 2022, Judge Clarkson ruled that, based on Judge Robles' opinion, that that was non-dischargeable debt. And I believe it was because there was this innuendo that when the State Bar said, well, CASAS is on appeal before the Ninth Circuit, which was true, but was on the CSF debt that was just blanket CSF debt that wasn't pointed to any person that he was ordered to pay. The State Bar never cross-appealed what Judge Robles had ruled in 2021. And on August 1, 2022, the Ninth Circuit made it very clear that the State Bar never appealed that and never disagreed with that position. And therefore, when I did my motion for reconsideration, which was heard on September 8, 2022, it was, in my view, an error for Judge Clarkson to say, okay, you get declaratory relief, but you don't get violation of a discharge injunction. Again, under Taggart, contempt is appropriate unless there is a fair-grounded doubt that discharge doesn't apply. Here, there is a fair-grounded doubt by the State Bar when it knew that actually what Judge Robles ruled was consistent with that debt I wouldn't have to repay. They knew that they didn't appeal that. They didn't cross-appeal Judge Robles' decision. We did not have to wait until August 1, 2022, for the Ninth Circuit to rule. Because the issue before the Ninth Circuit was just this. And let me explain this clearer for someone who's never been through a disciplinary proceeding like I have. So, you can have a disciplinary proceeding, and it goes to recommendation, and then the California Supreme Court issues an order like they did in my case, saying you must pay restitution to Dr. Woods for $20,000. But also, there could be 10 other unknown people who could just file claims with the Client Security Fund. That never goes through a prosecution process. And the Client Security Fund can then just go ahead and pay them and issue their own order, saying you have to reimburse the Client Security Fund. So, what happened in the Casas case was there was X amount of dollars where there were these orders against Casas. You must pay all these individuals this amount of money. And then there was a huge bucket that was just with the Client Security Fund that never was prosecuted, never any order, it was just a Client Security Fund order, where he was ordered to reimburse the Client Security Fund that amount. What was before the Ninth Circuit was the latter situation. And then they found in August 2022, that was dischargeable because it was just really compensatory, because you weren't creating more dollars for the State Bar that way, you were just reimbursing them. But what was never before the Ninth Circuit was the former type of debt, like my debt that I owed to Dr. Woods. And more egregious in my case is unlike Casas or anyone else, there was no Client Security Fund debt ordered in my case to pay Dr. Woods by the time I had discharged. That was created after the fact. It was like the State Bar wanted to get around the fact that it was discharged. They revived the debt and said, because we are a state agency, we're going to take things that you discharge, and we're going to throw it against you, and you're not going to get your license back until we do that. They did this constantly since I filed bankruptcy. It was order after order after order. And I couldn't get my license back. I finally got it back, and again, as soon as I got it back, they hit me with more things. But just taking that Client Security Fund, that is reversible error, because there's no way that the ruling could be correct, that they had a reasonable belief that that Client Security Fund debt was non-dischargeable. Well, was there any case that came out in a more clear statement? Part of my trouble is the length of time that you have to go to explain that kind of almost intuitively suggests some fair ground of doubt, hence why Judge Clarkson entered his original decision. Right? You're saying he erred in construing that, but again, all of this piles on. You know, the depth of the explanation, nuance, Judge Clarkson's decision, all suggests that there is a fair ground of doubt. That's a fair question to ask. You had to read Judge Robles' opinion carefully. I mean, Judge Robles is one of many bankruptcy judges, very well respected, I understand that. But that's not controlling either. No, that is not controlling. There was the Barofsky decision in the Sixth Circuit, of course not controlling, but bankruptcy law should be applied equally throughout circuits, so we did have that. We did have Henry Wade, which was here in 1990. The State Bar itself knew that it had to pay for a violation that was in the automatic stay stage still with William B. Look in 2015. I think that was in either the Northern or the Eastern District. So the State Bar had an inkling, right, from those other cases, but the State Bar actually knew what position it was really taking in the Cass's case. That's what makes it egregious to me. You're already past your seven minutes. That's fine. I don't want to spend it. But by the presentation of your oral argument, this suggests that the CSF is a fairly primary. It wasn't necessarily developed that way in the briefing. Is this, in reflection, your primary argument, the leading in all fours, or is it just one of many? It's one of many. The second thing I just want to say before I leave, which is the more nuanced version, but it's something that always gets repeated. Judge Clarkson understood it. So on the 11 U.S.C. 525, he just said, well, that was moot, right? And I gave you guys a case. Well, they already voluntarily, like they took it away, and then right when I was going to get a court order, they voluntarily reinstated it, so I never had a court order actually enjoining them. So there's the U.S. Supreme Court case that says no, you can't moot it out that way. You do have an injunction. I mean, by virtue of your litigation, it has been established what is dischargeable, what is not. Your injunction is the discharge injunction. I understand that's some hollow, you know, comfort to you given what it's taken to get there, but that's where we are. That injunction does exist. The nuance, though, which I do want to bring up because whatever this court writes, whatever is written in your opinion, I want to make sure that this is clear. The difference between 524 and 525 is what 525 says, you cannot withhold reinstatement based on dischargeable debt alone solely, right? The nuance is when I gave you, like, Garula or Tucci and those cases where they're tax cases, there's licenses being held, the Hawaiian pizza case, and they say, well, you can't withhold because of a tax that's purely financial, pecuniary. That's still a 525 violation. Even though if it's not dischargeable, you can't withhold, so that's still a 525 violation. So Judge Clarkson, I think we had a meeting on the minds, and that's why you don't see that. I didn't have to appeal that issue, and it's only on the mootness ground. But what consistently comes back with the state bars, they like to confuse the 524 and the 525, and they say, well, because there were these state bar costs here, we could hold her, the 30-day suspension, we could hold it for over three years, and that's not true based on these other violations. And that was not an issue the first time around. When you guys had this heard the first time, and I went up to the ninth, we were just looking at 11 U.S.C. 523A7. We weren't looking at that other issue. We were just looking on whether Finley should be overruled. So with that, I will reserve. I'm sorry, I only have three and a half minutes left, but I will try. Thank you. Ms. Grant. Good afternoon, Your Honor. My name is Suzanne Grant, and I represent defendants at the lease. I just wanted to address Ms. Albert's discussion of the CASA's case. She is misinterpreting Judge Robles' opinion. Judge Robles did not find that CSF orders that named a party were dischargeable. He rather found that the restitution conditions in Mr. CASA's discipline order were dischargeable debt based on the Ninth Circuit's opinion in Ms. Albert's own case. In Ms. Albert's Ninth Circuit case, which the panel should be familiar with, as it was presiding over her appeal in that case, the Ninth Circuit did find that discovery sanctions issued in connection with Ms. Robles were dischargeable or did not fall within the Section 523A7 discharge exception. They were overruled. Right. So on that basis, Judge Robles found, for that reason, the restitution contained in Mr. CASA's order was also dischargeable, and that the State Bar agreed with. The State Bar did not contest that, but the State Bar did contest, and Judge Robles agreed with the State Bar, importantly, as it was a reasonable position, was that the CSF debt was non-dischargeable for the reasons Judge Clarkson originally found, for the reasons every single other court before the Ninth Circuit has found it was non-dischargeable. This was an issue of first impression, and frankly it is ridiculous for her to argue that the position that the court in her case took was not reasonable. The State Bar had every reason to think, based on the law at the time, that the CSF debt was non-dischargeable, and once that got clarified by the Ninth Circuit, immediately within days, the State Bar did reimburse her, and that is why Judge Clarkson did grant her motion for reconsideration on that dischargeability issue. So I did want to address that. Just a few points on her appeal, I'm going to be brief. She does raise a litany of theories and errors in the bankruptcy court, but her theory boils down to two main points. She believes it was improper for the court to continue her suspension until she paid the discipline cost. She just argued right now that that was not an issue in the first appeal. It was an issue on the first appeal. The Ninth Circuit did affirm dismissal of the 525 claim, on the basis that the State Bar had a right to condition her license on that non-dischargeable debt. So her license was suspended not solely because she had not paid any dischargeable debt. They rejected that theory. Number two, Ms. Albert thinks that filing for bankruptcy somehow immunized her from the California Supreme Court and the State Bar's power to regulate her conduct. There is no legal basis for that. Attorney discipline proceedings are not debt collection mechanisms. They are part of the State Bar's regulatory authority of the practice of law. They exist to protect the public. Ms. Albert was disciplined for failing to violate court orders, failure to act with confidence, failure to provide accountings on returned client property, and failing to cooperate in the State Bar investigation. That was why she was disciplined. She was not disciplined for failing to pay a debt. To conclude, after the last round of appeals, the bankruptcy court then analyzed all issues that remain live in the case. It properly uses discretion to award Ms. Albert monetary civil contempt sanctions for the two-week delay the State Bar did admit violated the discharge injunction, even though the court did not believe a discharge violation occurred. Ms. Albert fails to show in her brief how the court abused that discretion. So unless the panel has any questions for me, I believe our brief fully addresses all her arguments on appeal. Thank you. Thank you very much. Ms. Albert, two-and-a-half minutes or so. Oh, three-and-a-half minutes, sorry, or so. Judge Robles' case's opinion is at 631-BR-469. If you go to page 3, it says, I quote, The State Bar concedes and the court agrees that the $201,706 in restitution payments has been discharged. CASA acknowledges that under State Bar California v. Finley, the court is required to find that the $61,000 in disciplinary costs has not been discharged. So there it clearly states, this is in 2021, that they conceded the $201,000. You have to go up and read the facts, and the facts show that it's just like Woods. CASA's for the $201,000 received an order listing different former clients, and it added up to the $201,000. And then the CSF issued an order saying, you must reimburse us. We paid those clients, now you must reimburse us. So that is exactly my facts, and those are the facts in 2021. The State Bar never cross-appealed. And even the Ninth Circuit then reaffirms that that issue was not before them. So the State Bar's flat wrong. As far as the State Bar costs, like I said, that was an issue on the Finley. I'm happy to bring Finley back up again. I'd like to ask you one question. Working through this, and I know your time's running out. Yeah. What was the specific action taken by the State Bar in violation of the automatic stay? The specific action after my 30 days while I was still in a chapter, there were three of them. The first one was while I was in a Chapter 13, they refused to reinstate my license based on failure to pay debt after the 30 days was over. And they only reinstated it about four days before the election and the district attorney's race, because I was running for Orange County District Attorney. So they withheld that, knowing I was in a Chapter 13. Again, they voluntarily reinstated it after all the ballots had went out, on the eve of the election, because I told Judge Smith I'm coming back in again for another TRO, because this is ridiculous. And I lost my designation as an attorney to a ballot challenge during that time. The second violation was in September 2018, when the State Bar went to collect debt on Woods and on Thin City Foods, which was another civil discovery sanctions. I mean, $47 sounds silly. It was because I accidentally wrote a check for $75, and it was supposed to be $47. So that was that second disciplinary order. But that was them pursuing that debt, saying I needed to pay it. And if not, and so they prosecuted me during the stay for that. And then they charged me State Bar costs for prosecuting. Any other, if we would be in regular court, you'd say, wait a second, you can't ask for your attorney's fees and costs when there's a stay in effect when you're trying to collect debt for third parties. At the time, the State Bar was saying we can collect debt for third parties because we're a state agency. And then the Ninth Circuit came down in 2020 saying, no, you can't. I'm sorry, you said you had a third event. I want to let you identify the third event. Thank you. You're past your time. Oh, sorry. And so the third event was the probation reports, where I had to sign under penalty of perjury that I was paying this debt. Okay. Thank you. Thank you. If you'd rather submit it, we've got it. This is not a problem. Thank you.
judges: FARIS, LAFFERTY, and SPRAKER